**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JOSEPH IRA PATTERSON,**

     **Plaintiff,**

**v.**                           **Case No. 3:11-cv-00943**

**WEST VIRGINIA REGIONAL JAIL AND
CORRECTIONAL FACILITY AUTHORITY;
WESTERN REGIONAL JAIL; WESTERN
REGIONAL JAIL ADMINISTRATOR MICHAEL
CLARK, SERGEANT FLEMINGS, and
CORPORAL FAREWELL, et al., SUED IN
THEIR INDIVIDUAL AND OFFICIAL
AUTHORITIES AND CAPACITIES,**

     **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is the initial screening of Plaintiff's complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 1-1) and Defendants' Motion to Dismiss (ECF No. 2). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Joseph Ira Patterson ("Patterson"), filed this complaint on October 18, 2011 in the Circuit Court of Cabell County, West Virginia. Defendants removed the case to federal court on November 23, 2011 and concurrently filed a Motion to Dismiss. Patterson filed a response to the Motion to Dismiss on January 17, 2012

1

(ECF No. 7), and the time for filing a reply has expired. Accordingly, this matter is fully briefed and ready for resolution.

In the complaint, Patterson alleges that he was the victim of racial and religious discrimination during his incarceration at the Western Regional Jail in Barboursville, West Virginia in violation of his constitutional and civil rights, including his right to be free from discrimination in places of public accommodation under 42 U.S.C. § 2000a.[1] Patterson seeks an award of money damages against each defendant in the amount of $100,000 plus court costs and attorneys fees. (ECF No. 1-1 at 2-3). For the reasons that follow, the undersigned **FINDS** that the complaint fails to state a claim upon which relief may be granted and, thus, **RECOMMENDS** that the presiding District Judge dismiss the complaint, with prejudice, and remove it from the docket of the Court.

## I.    Relevant History and Allegations

On February 5, 2010, Patterson was arrested and charged with kidnapping, assault, and robbery. He was taken to the Western Regional Jail ("WRJ") and was

---

[1] To the extent that Patterson cites 42 U.S.C. § 2000a as a basis for relief, his argument is misguided. Title II entitles individuals "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). "It sets forth a comprehensive list of establishments that qualify as a "place of public accommodation," *id.* § 2000a(b), and **"in so doing excludes from its coverage those categories of establishments not listed."** *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431 (4th Cir. 2006) (emphasis added). Places of public accommodation include: (1) hotels and other businesses providing "lodging to transient guests," *id.* § 2000a(b)(1); (2) restaurants and other facilities "principally engaged in selling food for consumption on the premises," *id.* § 2000a(b)(2); (3) "place[s] of exhibition or entertainment," *id.* § 2000a(b)(3); and (4) establishments that are, inter alia, within a covered establishment, id. § 2000a(b)(4). However, under 42 U.S.C. § 2000a, a prison is not listed as a place of public accommodation and, thus, is excluded from the act's coverage. *Lutchey v. Wiley*, 188 F.3d 508, 1999 WL 645951 at *2 (6th Cir. 1999) (citing 42 U.S.C. § 2000a(b)); *Soria v. Holder*, 2010 WL 5665046, at *2 n.3 (N.D. W.Va. June 16, 2010) (citing *Douglas v. U.S. Attorney General*, 404 F.Supp. 1314 (W.D. Okla. 1975)).

subsequently indicted by a Cabell County Grand Jury on three counts of kidnapping; attempted first degree robbery; two counts of first degree robbery; four counts of first degree sexual assault, and conspiracy. At the time of his arrest, Patterson was on supervised release arising from a federal drug trafficking conviction.

According to Patterson, since his arrest and incarceration, representatives of the WRJ have subjected him to unfair and discriminatory treatment due to his race (African American) and his religion (Muslim). In particular, Patterson alleges the following:

1. For a period of five months, he was the only black inmate housed in a particular Pod of the jail;

2. His mail has not always been sent out on time or at all;

3. He was forced to sleep on the floor during the majority of his 21-month stay at the WRJ.

4. He has received inadequate assistance in response to his grievances;

5. He has been harassed, profiled, and discriminated against by Sergeant Flemings and Corporal Farewell; and

6. His requests to be moved to another correctional facility have been refused. (ECF No. 1-1).[2]

In response, the defendants contend that they are entitled to a dismissal for the following reasons:

1. The WRJ and the West Virginia Regional Jail and Correctional Facility Authority ("WVRJA") are not persons subject to suit under 42 U.S.C. § 1983;

---

[2] In April 2012, Patterson entered a Kennedy plea to one count of first degree robbery. The remaining charges against him were dismissed. He is currently incarcerated at the Southwestern Regional Jail in Holden, West Virginia.

2.　　Defendants Michael Clark, Sergeant Flemings, and Corporal Farewell, in their official capacities, are entitled to sovereign immunity against a claim for money damages;

3.　　The doctrine of qualified immunity bars recovery against Defendants Clark, Flemings, and Farewell; and

4.　　Plaintiff's allegations are frivolous or otherwise fail to state a claim.

## II.　**Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915A, the Court must screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The Court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. A case is "frivolous" when it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In the present case, the defendants have moved to dismiss the complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp*, 550 U.S. at 570). The Supreme Court explained the "plausibility" standard in *Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Ashcroft*, 556 U.S. at 677 (quoting *Bell Atlantic* Corp, 550 U.S. at 544) (internal citations omitted).

Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679, citing *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007). While the Court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of legal conclusions that are "couched as . . . factual allegation[s]." *Ashcroft*, 556 U.S. at 677, (quoting *Bell Atlantic* Corp, 550 U.S. at 554). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint. This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even

under this less stringent standard, the complaint must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Patterson alleges wrongdoing that entitles him to relief under 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 provides as follows:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

In order to state a cause of action under § 1983, Patterson must present facts showing that: (1) a person (the defendant) deprived him of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of state law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, at *4 (D.S.C. 2010); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, a complaint that states plausible facts and accepted legal theories under § 1983 may nonetheless be subject to dismissal on initial screening or on a motion to dismiss if the defendant is immune from liability.

6

### III.   Analysis

### A. Defendants WRJ and the WVRJA

As stated, under § 1983 Patterson must demonstrate that a *person* acting under color of state law deprived him of a right guaranteed by the Constitution or federal laws. *Rendall-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Given that neither the WRJ nor the WVRJA are persons subject to suit under § 1983, Patterson's complaint should be dismissed against them. *Roach v. Burch,* 825 F.Supp. 116 (N.D.W.Va. 1993); *See* also, *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989); *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F.Supp.2d 803 (S.D.W.Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.)[3]

Furthermore, as an arm of the State of West Virginia, the WVRJA, and by extension the WRJ, enjoy sovereign immunity from suit under the Eleventh Amendment to the United States Constitution.[4] *Roach,* 825 F.Supp. at 119. This sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint,* 2011 WL 286133 (D.S.C.) (citing *Will,* 491 U.S. at 78 (1989)); *see also Regents of the Univ. of*

---

[3] The Western Regional Jail is nothing more than a facility operated and controlled by the Authority. *West Virginia Code § 30-20-1a, et seq.* As such, the Jail is subsumed by the Authority and, thus, is not a "person" under § 1983. *Noe v. West Virginia,* 2010 WL 3025561 at *5 (N.D.W.Va.). *See also Mora v. Westville Correctional Facility,* 2008 WL 2906761 (N.D. Ind.) at *2-3.

[4]  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

*California v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."); *Field v. McMaster,* 2010 WL 1076060 (D.S.C. March 18, 2010) (An agency of the State is immune from suit regardless of the nature of relief sought). Consequently, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that defendants WRJ and WVRJA are immune from suit pursuant the doctrine of sovereign immunity, are not "persons" under the provisions of § 1983, and are entitled to be dismissed from this case.

### B. Defendants Clark, Flemings, and Farewell

Defendants Clark, Flemings, and Farewell have been sued in both their official and individual capacities. The law is well-settled that an officer of a State acting in his or her official capacity is entitled to sovereign immunity from claims for money damages. *Will,* 491 U.S. at 70. As the Supreme Court explained in *Will,* "a suit brought against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different than a suit against the State itself." *Id.* at 71. "[W]hen the action is in essence one for the recovery of money from the State, the State is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury of Ind.,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. (1945). Moreover, because a plaintiff making a § 1983 claim must name a person acting under color of state law, it follows that state

8

officials acting in their official capacities are not "persons" subject to a claim for compensatory damages under § 1983.[5] *Will,* 491 U.S. at 71. Given that officers of the State, acting in their official capacities, are protected by sovereign immunity and are not persons for the purposes of § 1983, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that the claims against defendants Michael Clark, Sergeant Flemings, and Corporal Farewell, in their official capacities, should be dismissed.

On the other hand, state officials acting in their personal capacities under color of state law are not afforded sovereign immunity from suit. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The distinction lies not in "the capacity in which the officer inflicts the alleged injury," but in "the capacity in which the state officer is sued." *Id.* at 26.  The "Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* at 30-31 (quoting *Schuerer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Accordingly, Clark, Flemings, and Farewell, in their individual capacities, are properly named defendants in the present action.

As individuals, the defendants are entitled to raise any personal immunity from suit that they may enjoy as government officials. *Harlow v. Fitzgerald*, 475 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, Defendants claim that the doctrine of qualified immunity shields them in their individual capacities from Patterson's claims. (ECF No. 3 at 6). The doctrine of qualified immunity protects

---

[5] It should be noted that a state officer sued in his official capacity is not immune to claims for prospective relief. *Will*, 491 U.S. at 71 (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).  However, Patterson seeks only money damages.

government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 192 S.Ct. 808, 172 L.Ed.2d 565 (2009). Qualified immunity is more than a mere defense; it is immunity from suit, designed to "ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S.Ct. 3043, 97 L.Ed.2d 523 (1987)) (internal quotation marks omitted). As such, courts must examine and resolve claims of qualified immunity "at the earliest possible stage in litigation." *Hunter* v. *Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

Two important interests must be balanced when applying qualified immunity. The first is "the need to hold public officials accountable when they exercise power irresponsibly," and second is, "the need to shield officials from harassment, distraction and liability when they perform their duties." *Pearson*, 555 U.S. at 231. Consequently, the Supreme Court developed a two-prong test for determining the applicability of qualified immunity in a particular action. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Pearson*, 555 U.S. at 232. First, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and second, "the court must decide whether the right at issue was clearly established at the time of defendants' alleged misconduct." *Pearson*, 555 U.S. at 232. In making the second assessment, the court "ascertains 'whether a reasonable [official] could have believed [the challenged conduct] to be lawful, in light of clearly established law.'" *Meeker v. Edmundson,* 415 F.3d 317, 323

10

(4th Cir.2005) (quoting *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). It is not mandatory that both prongs of the test be performed, if analysis under one prong resolves the issues. *Pearson*, 555 U.S. at 232. Put simply, "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity," and the suit is barred. *Saucier*, 533 U.S. at 201. Similarly, if the constitutional right claimed to have been violated was not clearly established at the time of the alleged violation, it is unnecessary for the court to determine if a violation actually occurred. However, if the allegations indicate that a constitutional violation occurred, then the reasonableness of the official's action must be examined in light of the clearly established law in effect at the time. If the constitutional right was not clearly established at the time of the violation, qualified immunity applies. *Pearson*, 555 U.S. at 244.

In the present action, Patterson alleges that the individual defendants racially profiled, harassed, and religiously discriminated against him. (ECF No. 1-1 at 2). Having carefully reviewed Patterson's complaint and his response to the motion to dismiss, the undersigned **FINDS** that Patterson fails to make a *prima facie* showing that any of the individual defendants violated a constitutional right belonging to him; accordingly, the defendants are entitled to a dismissal on the basis of qualified immunity. In addition, the undersigned **FINDS** that Patterson fails to state a plausible cause of action under § 1983; therefore, the complaint should be dismissed, with prejudice, pursuant to the screening provisions contained in 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(6).

### *Racial Discrimination*

Inmates are protected from racial discrimination by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) ("[T]o establish a violation of the Equal Protection Clause, [the plaintiff] must prove that a racially discriminatory intent or purpose was a factor in the decision of prison officials."). An inmate's rights under the Equal Protection Clause may be subject to restrictions that are reasonably related to a legitimate penological interest. *See Morrison*, 239 F.3d at 655.

In the case at bar, Patterson alleges that the "environment" at the WRJ "seemed to be Racially Profiled," because he was the only black male housed in a particular Pod for a period of five months. He adds that he was racially profiled during his entire stay at the WRJ and contends that Flemings and Farewell "both show prejudice and Religious Discrimination toward the defendant [sic]." However, Patterson offers nothing more than speculative and conclusory statements. He suggests that black and white inmates are treated disparately at the WRJ, without supplying even the thinnest factual foundation to support that conjecture. He

12

complains that he was the only African American male assigned to a Pod in the Jail, but provides no additional detail upon which the Court could reasonably infer that his cell assignment was based upon his race rather than the more likely explanation that he was placed where space was available. Significantly, Patterson does not identify any specific action or decision on the part of the *named defendants* which arguably violated a constitutional right, nor articulates any facts demonstrating "that a racially discriminatory intent or purpose was a factor in the [action or] decision of prison officials." *Veney*, 293 F.3d at 732. Rather, Patterson loosely uses phrases such as "racial profiling" and "racial problems" as the basis for his complaint. "Although racial discrimination claims are actionable, merely conclusory allegations of discrimination are insufficient to state a claim under § 1983. Absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." *Foster v. Powers,* 2009 WL 349165 (D. S.C. at *9, fn. 4); see also *Ballance v. Virginia,* 130 F.Supp.2d 754, 761 (W.D.Va.2000); *Chapman v. Reynolds*, 378 F.Supp. 1137, 1140 (W.D.Va. 1974); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (conclusory allegation of racial discrimination in confiscation of excess property insufficient to state claim because no allegation was made that prisoners of another race were allowed to retain more property); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir.1980) (conclusory allegations of racial discrimination insufficient to state claim).

Speculative and conclusory averments, without more, are simply insufficient to state a plausible claim under § 1983. Moreover, given that Patterson's allegations fail to show a constitutional violation by any of the named defendants, they are entitled to

qualified immunity.

### *Religious Discrimination*

Patterson contends that "he has been harassed, racial profiled, and religious discriminated as well as had his Civil and Constitutional Rights Violated by Staff members such as Sergeant Flemings and Corporal Farewell whom both show prejudice and Religious Discrimination toward the defendant with their Authorities." (ECF No. 1-1 at 3).  The Free Exercise Clause of the First Amendment to the United States Constitution guarantees inmates the right to free exercise of religion while incarcerated, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and prohibits customs or policies that are intended to suppress religious beliefs and practices. *Morrison v. Garraghty,* 239 F.3d 648, 656 (4th Cir.2001). In addition, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., provides that no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden promotes a compelling governmental interest and is the least restrictive means of furthering that interest.[6] To succeed on a claim of religious discrimination under either of these provisions, an inmate must make an initial showing that he sincerely holds a religious belief and that action by the defendants substantially burdens his religious freedom or expression. "In essence, the

_____

[6] The RLUIPA was enacted to provide inmates with greater protection than that provided by the Constitution in the exercise of their religious freedom and expression.  *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir.2006).

plaintiff's claims under the Free Exercise clause and the RLUIPA impose the same requirements: the plaintiff must allege facts showing that a particular action by a particular defendant 'substantially burdened his sincerely-held religious beliefs.'" *Blakely v. Wards,* 2011 WL 2559601 *10 (D.S.C. May 20, 2011) (quoting *Ajaj v. Federal Bureau of Prisons,* 2011 WL 902440 (D.Colo.2011)); *see also Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). The Supreme Court has defined "substantial burden" as "substantial pressure on an adherent to modify his behavior and to violate his beliefs, *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), or an action that compels a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion ... on the other hand," *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

Once again, Patterson's complaint lacks any factual recitation detailing how and when his right to exercise his religion was purportedly violated and by whom. He challenges no specific institutional policy, nor describes a custom or practice that substantially burdened his right.  He fails to allege any particular act by any particular defendant that impeded his religious freedom or expression. In response to the motion to dismiss the complaint, Patterson supplied the Court with approximately 150 requests and grievances that he filed with the WRJ between February 2010 and January 2012. (ECF Nos. 7 and 7-1). Only a small percentage of the forms involved his religion. On several forms, Patterson made requests for kosher or Muslim meals

15

and asked for their delivery to be coordinated around his period of fasting during Ramadan. A few other forms made requests for a Qur'an or for access to a Muslim spiritual leader. In each instance, officials at the WRJ either complied with the request or gave assistance to Patterson in some form. Importantly, none of the requests or grievances contained complaints *against the named defendants* arising from acts allegedly designed to suppress or burden Patterson's religious convictions or practices. In the absence of allegations forming the basis of a violation of the Free Exercise Clause or the RLUIPA, Patterson's complaint must be dismissed for failure to state a claim.[7] Likewise, the lack of evidence substantiating a constitutional violation by some or all of the individual defendants triggers application of their qualified immunity to be free of suit.

### Cruel and Unusual Punishment

In addition to the claims of racial and religious discrimination, Patterson alleges that at various times during his incarceration at the WRJ he was forced to sleep on the floor. (ECF No. 1-1 at 1). In particular, Patterson claims that he slept on the floor for the majority of his 21 month stay at WRJ and "now at this particular time ... has been moved from a bunk bed for Non-policy reasons to the floor of another Pod after going on with hunger strike to get out of protective custody in which he was not needed to be all because he refused to go to two other Pods that is unequal with race and the other had racial problems occurring inside the Pod." (ECF No. 1-1 at 2)

---

[7] Patterson's claims of religious discrimination also fail under the RLUIPA inasmuch as he asks only for money damages, which are not available under the act. *Rendelman v. Rouse,* 569 F.3d 182 (4th Cir. 2009).

16

The Eighth Amendment to the United States Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 12 8 L.Ed.2d 811 (1994). However, "to the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "In examining deprivations complained of by an inmate as a result of confinement, courts must balance 'the legitimate rights of the prisoner [with] the necessary concern and responsibility of the prison authorities for security and order.'" *Crowe v. Leeke*, 540 F.2d 740, 741 (4th Cir. 1976) (quoting *Sweets v. South Carolina Department of Corrections*, 529 F.2d 854, 860 (4th Cir. 1975) (holding that the constitution prohibition against cruel and unusual punishment was not violated by the fact that the prisoner was forced to sleep on the floor in an overcrowded cell.)

To state an Eighth Amendment claim based on prison conditions, an inmate must allege (1) an objective element—that the prison official's action was sufficiently serious to deprive the inmate of the minimal civilized measure of life necessities; and (2) a subjective element—that the prison official's actual state of mind was one of "deliberate indifference" to the effect of the deprivation on the inmate's health or safety. *Farmer*, 511 U.S. at 834. Here, Patterson's complaint lacks the necessary factual basis to establish the existence of an extreme or unconscionable condition of confinement that would suffice to state an actionable Eighth Amendment claim.

17

Patterson makes no assertion that his sleeping conditions were harsh, unsanitary, excessively uncomfortable, or that they endangered his health or safety. He describes no particular physical injury from having slept on the floor. Moreover, he includes no allegations that *any of the named defendants* were personally responsible for his sleeping situation, subjectively aware that he was being deprived of the minimal necessities of life, and deliberately indifferent to the dangers of this alleged deprivation. To the contrary, in the voluminous request and grievance forms submitted by Patterson, not a single one mentioned a potentially unconstitutional sleeping arrangement. (ECF Nos. 7 and 7-1). Thus, Patterson's allegations do not establish either element of an unconstitutional condition of confinement.

To the extent that Patterson suggests that his sleeping arrangement was a retaliatory act, he must state a *prima facie* case of retaliation. To do so, Patterson must show that he engaged in a constitutionally protected activity and that his participation in that activity was a substantial or motivating factor in a particular defendant's retaliatory act.  Patterson simply does not factually support such a claim. He asserts that he was moved from a bunk bed to the floor of another Pod after he went on a hunger strike to force his release from protective custody. These sparse facts do not indicate that Patterson engaged in constitutionally protected activity or that his move was in retaliation for participation in the protected activity. More importantly, Patterson makes no claim that the particular defendants named in this civil action, while acting in their personal capacities, ordered him moved to sleep on the floor of another Pod. As such, Patterson's complaint fails to state a plausible claim for relief under § 1983 and further fails to demonstrate a violation of a constitutional

18

right by any of the named defendants; thereby, entitling the defendants to qualified immunity from suit.

### *Mail*

Finally, Patterson claims that his mail was not always sent out on time or at all. (ECF No. 1-1 at 2). He admits that "proof" of this alleged constitutional deprivation "is hard to present," but states that he "does have an officer who can acknowledge … [one specific] scenario when some mail he sent out a week prior to when it was actually sent can verify as proof." Inmates enjoy a First Amendment right to send and receive mail. *Thornburgh v. Abbott,* 490 U.S. 401, 407-08, 109 S.Ct. 1874, 104 L.Ed.2d 459, (1989). At the same time, correctional facilities have a right to develop policies to control the mail to and from inmates to the extent that a legitimate penological goal is achieved and the policies do not place an unreasonably burden on the inmate's constitutional right. *Id.* Isolated instances of mishandled mail, "without evidence of improper motive or resulting interference with [the] right to counsel or to access to the courts," do not state a constitutional deprivation. *Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir. 1990). Patterson does not allege that a particular policy of the WRJ was constitutionally invalid or that he suffered an actual injury as a result of his mail being sent out late. Likewise, he makes no assertion that any of the named defendants deliberately interfered with his mail and had any involvement in the facility's mail services. Patterson describes one instance in which his outgoing mail was delayed by a week. Nonetheless, he states no facts upon which to infer that the delay was the result of an improper motive or something more purposeful than a mere isolated instance of mishandled mail. Therefore, Patterson again fails to state a

claim compensable at law. Similarly, Patterson fails to provide even a scintilla of proof that any of the named defendants violated a constitutional right belonging to him. Accordingly, the defendants are entitled to qualified immunity.

## IV. <u>Conclusion</u>

The undersigned **FINDS** that Patterson does not provide the slightest factual basis to support his claims of religious and racial discrimination and unconstitutional conditions of confinement. For this reason, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that (1) Patterson's complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and the screening provisions of 28 U.S.C. § 1915A; (2) the WRJ, WVRJA, and the individual defendants in their official capacities are not persons subject to suit under 42 U.S.C. § 1983 and further are immune from suit under the doctrine of sovereign immunity; and (3) the individual defendants, in their personal capacities, are entitled to dismissal of the complaint under the doctrine of qualified immunity.

## V. <u>Proposal and Recommendation</u>

The undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the proposed findings and **RECOMMENDS** that the presiding District Judge **GRANT** the Defendants' Motion to Dismiss (ECF No. 2), **DISMISS** the complaint**, with prejudice**, (ECF NO. 1-1), and remove it from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers,

United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, and any counsel of record.

**FILED:** July 3, 2012.

_____
Cheryl A. Eifert
United States Magistrate Judge